**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**UNITED STATES OF AMERICA,**

v. **Case No.: 8:25-cr-106-VMC-AAS-1**

**RAYQUAN RAINEY /**

**DEFENDANT'S SENTENCING MEMORANDUM**

Rayquan Rainey respectfully requests a sentence of 120 months' imprisonment: 60 months on Counts One, Two, Three, and Five, concurrent with one another, followed by 60 months on Count Four. He requests concurrent terms of supervised release totaling four years. This sentence recognizes the seriousness of his drug and firearm offenses and his return to criminal conduct after an earlier federal sentence. It also gives appropriate weight to his efforts to remain a father to two young daughters, his participation in available programming, and the people prepared to support the work of rebuilding his life.

Rayelle was nine days old when he was arrested. Before then, he recalls holding her against his chest, feeding her, and caring for her so her mother could rest. After his arrest, he says a detective allowed her mother to bring the baby to the hospital before he was booked into jail. He remembers holding her and realizing that both of his daughters would now face a long separation from him. His own conduct caused that separation. The question now is whether he

can use the years ahead to become a dependable father while serving the substantial punishment the law requires.

## I. STATEMENT OF FACTS AND PROCEDURAL HISTORY

On August 17, 2026, Mr. Rainey pleaded guilty to Counts One through Five of the Superseding Indictment without a written plea agreement. The Court accepted his pleas and adjudicated him guilty the following day. PSR ¶ 10. The convictions concern possession of ammunition as a felon in June 2024 and, in July 2024, drug conspiracy, possession with intent to distribute, possession of a firearm in furtherance of drug trafficking, and possession of a firearm and ammunition as a felon. PSR ¶¶ 3–7. The PSR attributes 177.67 grams of fentanyl and 56.52 grams of cocaine to him. PSR ¶ 17. His prior federal supervised-release revocation remains pending separately. PSR ¶ 52.

## II. SENTENCING GUIDELINES CALCULATION

The November 12, 2026 PSR applies the 2026 Guidelines Manual. PSR ¶ 22. It calculates a base offense level of 26, adds two levels under USSG §3C1.2, and subtracts three levels for acceptance of responsibility, yielding a total offense level of 25. PSR ¶¶ 29–38. The revised report removes the two points previously assigned to the conviction in paragraph 44, adds three points for the prior federal conviction, and adds one point because Mr. Rainey committed these offenses while on federal supervised release. The resulting

score is nine and the criminal history category remains IV. PSR ¶¶ 44, 52–55. The advisory range is 84 to 105 months, plus 60 consecutive months on Count Four, for a combined range of 144 to 165 months. PSR ¶¶ 39, 90.

Mr. Rainey maintains his §3C1.2 objection to paragraphs 20 and 33 and incorporates his November 2 written objection. He disputes whether the flight created the required substantial risk of death or serious bodily injury to another person because of the late hour and absence of other civilian traffic or pedestrians, distinguishing this case from *United States v. Washington*, 434 F.3d 1265, 1267–68 (11th Cir. 2006). If sustained, the total offense level would be 23 and the combined range would be 130 to 147 months. PSR Addendum at 3. The § 3553(a) request for 120 months stands independently of that ruling.

## III. A SENTENCE OF 120 MONTHS IS SUFFICIENT

Section 3553(a) requires an individualized sentence sufficient, but no greater than necessary, to accomplish the purposes of sentencing. The Court must consider the offenses, Mr. Rainey's history and characteristics, the advisory range, and the need for punishment, deterrence, public protection, and appropriate correctional services. 18 U.S.C. § 3553(a). The following circumstances support a sentence of 120 months even if the Court adopts the PSR's Guidelines calculation.

***A. Nine days together ended with a separation he caused.***

Mr. Rainey was already the father of a young daughter, Rylie, when his second child was born. His younger daughter, Rayelle, was born nine days before the July 25, 2024 arrest. PSR ¶¶ 11, 69–70. In the week leading up to his arrest he experienced the ordinary work of those first days: feeding the baby, changing her, getting up early, and holding her while her mother rested. He recalls how small she felt against his chest and in the crook of his arm. He had bought diapers before her birth and says he accompanied her mother to prenatal appointments.

Those details explain what he had begun to share in the household and what his conduct interrupted. Precious Lasane, the child's mother, describes learning to parent while carrying responsibilities that they had previously shared. She writes about losing the daily routines and ordinary moments of raising their daughter together. Ex. A at 7. The cost of his absence has fallen on her as well as on the children.

The hospital visit remains the memory Mr. Rainey returns to when asked about fatherhood. Holding his newborn before entering jail made the coming separation painfully immediate. He had wanted to protect and provide for his daughters, yet his decisions had taken him away from them. His

recollection supplies a reason to change, actually making that change will require consistent conduct long after this sentencing.

***B. He understands the absence his daughters now face.***

Mr. Rainey grew up without a consistent relationship with his own father. After he moved with his mother from Sarasota to St. Petersburg at age nine, his father's homelessness and lack of transportation made contact difficult. He describes a relationship that never developed into one of guidance or dependable support. PSR ¶ 64. His mother remained close and supportive, and he credits her with providing guidance. PSR ¶ 65.

Tracy Holley, another maternal figure for Mr. Rainey, offers an independent view of those years. She knew him as a neighborhood child, welcomed him into her household, and included him in holidays and family gatherings. Her older sons looked out for him. She remembers his willingness to help with tasks around her home, and she also remembers the inconsistent paternal presence in his life. Now she worries that his daughters will experience a similar absence. Ex. A at 4–5.

His daughters' futures remain open. Even during imprisonment, he can maintain a relationship in which they hear from him, receive encouragement, and know that he takes an interest in their lives. The family support described

in Exhibit A can help him sustain that connection. It will be his responsibility to use it.

***C. His daughters are growing, and his responsibility continues.***

Mr. Rainey speaks with his children every day and uses video calls to stay involved. He misses birthdays, first words, first steps, and the ordinary routines he wants to share with them. His absence is about more than major occasions. He is also unavailable when they need comfort, help, or attention.

Ms. Lasane describes the relationship that continues despite his confinement. She says he encourages the family, offers reassurance, and helps them smile when things are difficult at home. She also describes lengthy conversations in which he has acknowledged his choices and the importance of taking responsibility. Ex. A at 7–8. His mother, Tiffiny Rainey, explains that she is helping care for and support the girls and wants to keep them connected to their father. She intends to continue that support during his imprisonment and after his release. Ex. A at 2–3. These accounts identify people already doing the work of maintaining the family relationship.

The photographs in Exhibit B show Rylie, Rayelle, and his family. They include images of Mr. Rainey holding Rayelle and photographs of the children as they grow, including holiday scenes and the girls together. Ex. B at 2–5. The children are now four and two. Ex. A at 2. Their lives are continuing while he

is incarcerated. Sustaining his connection with them now, and preparing to assume daily responsibilities when he returns, are parts of the same obligation.

***D. He has begun the work that a different future requires.***

Mr. Rainey participated in the WestCare Matrix group, which addresses stopping destructive cycles and recognizing internal and external triggers. He also attended anger-management classes and worship activities. Ms. Lasane confirms that he chose to join jail programs and describes a change in perspective in their conversations. Ex. A at 7–8. These are early efforts. They provide a basis for continued work without requiring the Court to assume that rehabilitation is complete.

Education remains a practical need. Mr. Rainey completed the tenth grade, received intensive reading assistance in school, and has not earned a GED. PSR ¶¶ 82–85. His federal hold prevents him from enrolling in the jail's GED program and limits the other classes available to him. During his prior federal imprisonment, Bureau of Prisons records show no disciplinary infractions and attendance in GED courses, although he did not obtain the credential. PSR ¶ 52. That record shows an ability to comply and participate in a structured setting. His subsequent offenses show the difficulty he still faces in carrying that conduct into the community.

His release goals build on work he has done before. Mr. Rainey had full-time work as an auto mechanic from 2022 to 2024, earning approximately $300 to $500 per week, as well as earlier pressure-washing and lawn-care work. PSR ¶ 86. He plans to seek stable employment, share parenting responsibilities, comply with supervision, and distance himself from negative influences. His desire to continue his education and move away from those influences also demonstrate positive growth and goal oriented planning. PSR ¶¶ 71–72, 85.

The letters identify support for those goals. His mother commits to continued encouragement and help maintaining his relationship with the girls. Ms. Holley offers ongoing contact, a welcoming home, and help finding opportunities for work. Ms. Lasane commits to supporting responsible decisions and remaining a positive influence. Ex. A at 3, 5, 8–9. These commitments do not establish a secured job or an approved release address. But they do show that Mr. Rainey is not going through this alone and will have support upon release.

**E. Ten years provides substantial punishment and a workable path forward.**

The strongest concern is Mr. Rainey's further criminal conduct. The Court can account for those concerns through the requested ten-year sentence. That term is five times the length of his prior federal prison sentence. It

imposes a substantial loss of liberty, separates him from the community for a lengthy period, and gives force to the warning that renewed drug and firearm conduct brings severe consequences. His family relationships did not prevent these offenses, and promises about fatherhood cannot establish that he will never offend again. The present request rests on the full combination of substantial imprisonment, his guilty pleas, the specific efforts he has begun, continued family involvement, and supervision after release.

The Court may consider the mandatory consecutive sentence on Count Four when determining the appropriate terms on the other counts. *Dean v. United States*, 581 U.S. 62 (2017). Sixty months on the non-§ 924(c) counts, followed by sixty months on Count Four, respects both the five-year drug minimum and the separate firearm minimum. 21 U.S.C. § 841(b)(1)(B); 18 U.S.C. § 924(c)(1)(A)(i), (D)(ii). The combined sentence is the punishment to evaluate under § 3553(a). The defense submits that adding another two years at the bottom of the PSR range is unnecessary in light of that substantial total term and the individualized circumstances described here.

Four years of supervised release will require him to demonstrate dependability in the community. Stable employment, educational progress, and compliance with supervision will give practical content to the goals he has described. He requests recommendations for GED and vocational instruction,

anger-management programming, and parenting programs during imprisonment as available. His limited education, identified by probation as a potential basis for a downward variance, makes those services particularly relevant. PSR ¶ 106. The requested sentence gives appropriate weight to punishment and public protection while preserving a meaningful opportunity to resume daily parenting responsibilities.

## CONCLUSION

Mr. Rainey asks the Court to impose 60 months on Counts One, Two, Three, and Five, concurrent with one another, and 60 consecutive months on Count Four, for a total of 120 months in this case. He requests four years of supervised release on Counts Two, Three, and Four and three years on Counts One and Five, all concurrent. Those terms satisfy the drug counts' four-year minimum and the applicable limits on the firearm counts. 21 U.S.C. § 841(b)(1)(B); 18 U.S.C. §§ 3583(b), 3624(e); PSR ¶¶ 92–94. He also requests the educational and programming recommendations described above and no fine because he lacks the ability to pay. PSR ¶ 87.

The nine days he spent with his newborn cannot be restored. His responsibility to Rayelle and Rylie continues. A sentence of 120 months holds

him accountable for his conduct while allowing the work of becoming a dependable father to continue during imprisonment and, eventually, at home.

Respectfully submitted this 13th day of November 2026,

CHARLES L. PRITCHARD, JR.
FEDERAL PUBLIC DEFENDER

*/s/ Ryan J. Maguire*
Ryan J. Maguire,
Assistant Federal Defender
Florida Bar No. 117534
400 North Tampa St. Suite 2700
Tampa, FL 33602
Telephone: (813) 228-2715
Facsimile: (813) 228-2562
Email: ryan_maguire@fd.org

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 13th day of November 2026, a true copy of the foregoing was filed with the Clerk of the Court using the CM/ECF system, which will send a notice of the electronic filing to:

Brooke Michelle Padgett, AUSA

*/s/ Ryan J. Maguire*
Ryan J. Maguire,
Assistant Federal Defender